# Case No. 14,466.

## UNITED STATES v. ARMIJO.

[1 Cal. Law J. 229.]

District Court N. D. California. Feb. 25, 1863.[1]

MEXICAN LAND GRANT — CONFLICTING CLAIMS— SURVEY—OBJECTIONS TO FORM OF PLAT.

Survey of rancho known as "Tolenas," in Solano county, approved February, 1863, so far as the controversy between it and the Suisun rancho is concerned, leaving to the United States the right hereafter to bring to the notice of the court more particularly the precise objections to

1 [Affirmed in 5 Wall. (72 U. S.) 444.]

the survey, as to compactness of form, and encroachment upon the rights of neighbors.

[This was a claim by Dolores Risego Armijo and others, heirs of José Francisco Armijo, for the rancho Las Tolenas, three square leagues in Solano county, granted March 10, 1840, by Juan B. Alvarado to José Francisco Armijo. Claim filed February 9, 1852. Rejected by the commission August 8, 1854. Confirmed by the district court on appeal at the June term, 1857. Case No. 536. Confirmation affirmed by the supreme court on appeal by the United States. Case unreported. (See 5 Wall. [72 U. S.] 444.) It is now heard upon objections to the confirmation of the survey.]

HOFFMAN, District Judge. The principal controversy in this case relates to the location of the southwestern line of the approved survey. It is contended that that line should be located at the Arroyo Seco, a small affluent of Suisun creek, and so as to include a considerable tract of land to the south of the line fixed by the official survey. The land thus sought to be included is confessedly within the limits of the official survey of the Suisun rancho, and of the patent issued in pursuance thereof to the owners of the latter. It is not pretended that the land in question is not within the limits of the Suisun rancho as described in the grant and on the diseño, nor on the other hand, that the survey of the Armijo rancho, which is now objected to, is not in like manner within its exterior boundaries. On referring to the diseños, it is seen that they represent, to a great extent, the same tract of land—that indicated on the Armijo diseño being from twelve to twenty leagues, and that represented on the Suisun diseño being from eight to ten leagues in extent. The grant to Armijo was for three leagues, and he is entitled to that quantity, to be taken within the exterior limits. The grant to Solano of the Suisun rancho was for four leagues, which quantity has been surveyed to him, as has been stated, within his exterior boundaries, and a patent issued.

It is claimed on the part of certain parties intervening in this proceeding, that the grant to Armijo is entitled to priority of location, even though the location desired should embrace land already included in the patent of the Suisun rancho. This claim is founded, first on the alleged priority of the grant to Armijo; and, secondly, on the alleged fact that Armijo not long after he obtained his grant, occupied and built a house upon a portion of his land, thus effecting, it is contended, a segregation of his three leagues, and attaching his title to a specific tract of land by acts which were conclusive upon him, the Mexican government, and the United States, who succeeded it. The land claimed to have been thus appropriated by Armijo as the three leagues to which he was entitled, is in part included, as before stated, in the Suisun patent.

First, as to the alleged priority of the Armijo grant: The grant to Armijo by the governor was issued on the 4th of March, 1840—that to Solano on the 21st of January, 1842; but it by no means follows that under Mexican laws and usages the priority of title would be determined by this circumstance alone. It appears that on the 16th of January, 1837, Solano presented his petition to M. G. Vallejo, the commandant general of the Southern frontier, and director of colonization, praying for the land of Suisun, with its appurtenances. "Said land," he states, "belongs to him by hereditary right from his ancestors, and he is actually in possession of it, but he wishes to revalidate his rights in accordance with the existing laws of the republic and of colonization recently decreed by the supreme government." On the 18th of January, 1837, the commandant general granted "temporarily and provisionally to Francisco Solano, chief of the tribes of this frontier, and captain of the Suisun, the lands of that name, as belonging to him by natural right and by actual possession." On the 15th of January, 1842, Solano presented a petition to the governor, in which he refers to the provisional grant and solicits "the corresponding title of concession, perpetual and hereditary, of the aforesaid land, in order that at no time may the petitioner or his heirs be molested in the pacific enjoyment of his property." On the 20th of January, 1842, the governor made his usual decree of concession, and on the succeeding day the grant issued. On the 3d of October, 1845, the grant was approved by the departmental assembly. The title papers of Francisco Armijo, in like manner, commence with a petition to the señor commandant general, but this petition was dated November 22, 1839, more than two years and a half later than that of Solano. The three leagues solicited in this petition are described as joining with the Suisun rancho. On the same day Vallejo gives permission to Armijo to occupy "the place of Las Tolenas, which joins with the rancho of Suisun, on account of its being vacant and not being private property." This marginal order further directs the petitioner to apply, with this decree, to the political authority, that it may serve him as a legal step, and "that the grant be made to him, unless there should be some other obstacle." It seems that, subsequently, Armijo presented a petition to the prefect of the First district, asking for a grant of the same land. This petition, with a favorable report, was referred by the prefect to the governor, and on the 4th of March, 1840, the title issued. The grant to Armijo was not approved or made "definitively valid" by the departmental assembly. From the foregoing it will be seen that, in every respect, except the date of the formal title, the title to Solano had pri-

ority over that of Armijo. The rights of Solano are distinctly recognized by Armijo in his own petition, and by Vallejo in his provisional concession, and apparently referred to in the first condition of the grant to Armijo, which prohibits him from "molesting the Indians who are located on the land, and the immediate neighbors with whom he joins." It is clear, therefore, that no conflict between the two titles was apprehended, for the land of Tolenas is described as bounded by Suisun, and is declared vacant and not private property by the very officer who, two years and a half before, had granted to Solano the lands of Suisun as belonging to him by natural right and actual possession.

Under these circumstances it appears to me plain that, according to Mexican usages, the rights of Solano would have been recognized as prior had any contest arisen, notwithstanding that the formal title issued first to Armijo. The archives abound in instances where, not only the equity created by a first occupation and cultivation under a provisional license to occupy, but even that created by a prior solicitation, has been recognized and enforced. In the Case of Estrada [Case No. 14,750], for the rancho Pastoria las Borregas, there was granted to Yñigo a piece of land, to which he alleged some equitable right by reason of an ancient permissive occupation, and this notwithstanding that a grant had already issued to Estrada for a tract embracing the same land. So in the Case of Alvisu [Id. 14,435], whose boundaries were found to include land whereof his neighbor, Higuera, had long been in occupation by permission of the ayuntamiento of San José. On application to the governor the boundaries of Alvisu were reformed so as to exclude the lands of Higuera, notwithstanding that Alvisu had obtained a formal title, while none had been issued to Higuera. In the cases of the rancho of Santa Teresa [Id. 14,583] and Laguna Seca [case unreported], the decrees of concession were issued to Bernal and Alvirez, respectively, for the two ranchos named. Alvirez, however, presented to the departmental assembly his petition, in which he alleged that, beyond the limits of the rancho conceded to him and within those of the rancho conceded to Bernal, he had cultivated a field, dug a ditch, etc. The assembly recognized the right growing out of this occupation and cultivation so far as to assign to Alvirez his cultivated field, notwithstanding it formed a wedge-shaped piece of land extending within the limits of Bernal's rancho. The grant to Prado Mesa, and the subsequent grant of a portion of the same land to the Indian, Gorgonio, affords another illustration—and many more might be added—of the respect paid to the inchoate rights or equities acquired by an ancient occupation, or by provisional licenses to occupy. In view of these facts it cannot, I think, be affirmed that a prior right of location, as against Solano, would have been recognized as existing in favor of Armijo—and more especially as Solano's grant had been approved by the departmental assembly, and he was in a condition to ask judicial possession, while the grant to Armijo, being unapproved, remained not "definitively valid," and no judicial possession could legally be given.

With regard to the occupation by Armijo, the evidence is doubtful and unsatisfactory. It is plain that, in 1847, after the change of sovereignty, he built an adobe near the arroyo Seco, and claimed that his three leagues were there to be located; but his first settlement, in 1841, seems to have been further to the north, and beyond the limits of the Suisun patent. It is contended that this settlement by Armijo operated to effect the segregation of the quantity granted. The same ground was taken with respect to this title, when presented to the supreme court of this state in Waterman v. Smith, 13 Cal. 373, and after elaborate argument and mature consideration was overruled. It was there held that occupation and cultivation could have no greater effect than a private survey; and that the latter has no force or validity in support of the claim, had been repeatedly decided by the supreme court. It was further held that, where a grant was for a certain quantity of land to be taken within a larger tract, that the right to designate the particular tract granted could only be exercised under the former government by the proper officer, and that this right passed, with other public rights, to the United States, to be exercised in pursuance of its laws and policy. That the location of a confirmed grant, where the quantity granted lies within a larger tract, rests exclusively with the executive department, and that its action cannot be reviewed or corrected by the ordinary tribunals, except so far as the rights of third persons, having a proprietary right attached to a particular tract paramount to that of the United States, as well as to that of the patentee, might require. But it was considered that the grantee of a certain quantity of land to be taken within a larger tract had no such right attached to any specific piece of land as would enable him to contest the conclusiveness of a patent issued to his neighbor, notwithstanding such patent might include lands within his exterior limits, provided that sufficient land was left within his exterior limits to give him the quantity granted. That the supreme court could have come to no other conclusion, without assuming the right to review and correct locations made by the proper officers of the United States, may, perhaps, be admitted; but it does not follow that this court, charged by the act of June 14, 1860 [12 Stat. 33], with that precise duty, is confined within limits so narrow. Notwithstanding that the right to

segregate and measure off the quantity granted, technically passed to the executive officers of the United States with other sovereign rights, yet this court has constantly held, in the exercise of its supervisory and directory power over the executive officers, both as against the United States, and the claimants, that the election of the particular tract was fixed by the occupation and cultivation of the grantee. The surveys, therefore, have, in all instances, been made to include such settlements and occupation, and the segregation effected in the same manner as would have been by the Mexican officer in giving juridical possession. If, then, both of these ranchos had been before the court for location, and their diseños found to embrace the greater part of the same land, their respective locations would probably have been determined by the occupation and settlement of the parties. But it happens that, in this case, the rancho of Suisun has been finally located and a patent issued by the United States. If the location of the Armijo rancho, claimed by the intervenors, be allowed, the only course would be to direct a patent for that rancho to be issued, overlapping and embracing lands covered by the patent to Suisun. In the conflict which would thus arise between the two patents, it may well be doubted whether, by reason of the alleged priority of Armijo, his title would be adjudged superior. In the case of U. S. v. Fossatt [20 How. (61 U. S.) 413] it was held that the jurisdiction of this court over cases of this description continued until patent issued. Though this decision was wholly unanticipated, yet it must be taken as authority for the position that the claimants under Armijo might have filed their objections to the Suisun survey, and brought their equities, if any they have, arising from the occupation and settlement within their exterior limits, to the notice of the court. The location of both ranchos could then have been determined in conformity to the equitable principles applicable to the subject. But the patent for Suisun has been issued—the executive department, in whom the right was vested, at least preliminarily, to effect the segregation of the quantity granted Solano, have done so, and their action has become final. It is not pretended that the land thus segregated is without the exterior limits of his grant. If, then, a portion of the land embraced within the patent be also surveyed under the Armijo grant, and included in the patent of the latter, the effect would be, if the latter patent should be adjudged to convey the superior title, to diminish, without compensation or equivalent, by the amount thus included within the second patent, the area of the Suisun grant. Without affirming, therefore, as seems to be the opinion of the supreme court of this state, that a survey and patent is a final and conclusive establishment of the location and boundaries of

the tract confirmed, notwithstanding that such location may be plainly without the exterior limits of the grant, and embrace a large—and perhaps the most valuable—portion of the land within the exterior limits of any colindante, provided that enough remains within those exterior limits—it may be a barren sierra or worthless lands,—to satisfy the quantity confirmed, it will be sufficient to say, in this case, that, where the segregation has been effected by competent authority and in the manner provided by law, it will be final and conclusive when clearly within the exterior boundaries of the grant, as against a neighbor whose diseño embraces a portion of the same lands, but whose location within his exterior limits has not been previously fixed by competent authority, under this or the former government. Whatever equities, therefore, Armijo might have urged, if the location of both ranchos were an open question, I think he is concluded by the patent already issued to his neighbor, who, as before observed, must be considered as having, under the Mexican system, the prior right.

In the foregoing observations I have treated the case as if Armijo had clearly shown a prior location and settlement on lands within the Suisun patent. But the proof on this point, as before remarked, is unsatisfactory. As early as 1847, and at the time of building the adobe house at the arroyo Seco, a contest arose as to the respective limits of the ranchos—Vallejo, to whom Solano's title had been assigned, and who had granted the provisional license to occupy in both cases, contending that the adobe house which Armijo was building was within the limits of the Suisun rancho. A suit at law was instituted before the alcalde, and the dispute was determined by arbitration. In the award of the arbitration it is declared that the limits of each rancho are clearly determined in the respective titles; and it seems that, by a correct construction of the award, which proceeds to specify the common boundary between them, the Sierra Madre, running in an east-northeast direction from the Suisun creek, was established as that boundary. These mountains are laid down on the Suisun diseño, and, though some question has been made as to what mountains were intended, I think it plain that the patent for Suisun has not passed beyond them. If this construction of the award and the identification of the Sierra Madre be correct, it is plain that Armijo cannot now attempt to unsettle the boundary formally established between him and Vallejo by judicial determination.

It is also objected on the part of various owners under the Armijo title, that the intervenors, who own but a small fraction of Armijo's interest, should not be allowed, contrary to their wishes, as well as to the interest of the owners of Suisun, to elect a location; but this right of election has con-

stantly been held by this court to be determined not by the comparative magnitude of the interests of the assignees of the original grantee, but by inquiring whether the grantee by his location and settlement, or by his deeds of specific parcels, had not himself made an election which he and his subsequent assigns were estopped to deny. The locations were therefore made by this court so as to include the settlement and cultivation of the grantee, and the parcels of land conveyed by him in the order of date until the whole quantity was obtained. If, therefore, the intervenors' titles for the lands they occupy were prior in date to that of persons holding the larger part of the rancho, or if they embraced lands already elected by the grantee by his occupation and settlement, the objection that their interests were small as compared with those of other assignees of the grantee would not avail.

But the question in this case is not between the various assignees of the grantee inter sese, but between them and the owners of the Suisun rancho; and as against the latter, I am of opinion that neither Armijo himself nor any nor all of the assignees under him have a right to cause their surveys to be made so as to include any portion of the land embraced within the patent to Suisun. This I understand to be the principal question in this case, and it was the one to which the attention of the counsel was chiefly directed. Exceptions, however, have been filed in the name of the United States, partly founded on the allegation that the ancient occupation of Armijo is not included in the survey, which has already been considered; and in part that the survey is not in a compact form. There would seem to be some force in the latter objection, but whether the survey could assume any other form without encroaching upon the limits of neighboring ranchos, as established by their patents, does not appear. It seems probable that any modification of the survey, while it might exclude settlers included within the present survey, would include others now excluded. No particular modification is suggested, except that by which the northern portion of the Suisun rancho would be included, and this location we have seen to be inadmissible. I shall therefore approve the official survey, leaving to the United States the right hereafter to bring to my notice more particularly the precise objections they make to the present survey, and to suggest in what manner the location may be made more compact without encroaching upon the rights of neighbors, and with due regard to the interests of the claimants.

[Upon an appeal to the supreme court, the decree of this court was affirmed. 5 Wall. (72 U. S.) 444.]

UNITED STATES (ARMIJO v.). See Case No. 536.